IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRADERIGHT SECURITIES, INC., GEORGE DRAGEL, MICHAEL RUKUJZO, and CHRISTOPHER R. WURTZINGER, | ) ) ) ) |
| Plaintiffs, | ) No. 10 C 2042 |
| v. | ) ) ) Judge Robert W. Gettleman |
| RICHARD G. KIRSCHMAN IRA, DENISE J. KIRSCHMAN IRA, and RICHARD G. KIRSCHMAN as Trustee of the KIRSCHMAN LIVING TRUST; | ) ) ) ) ) |
| and | ) ) |
| JIMMY RAYFORD GIBSON, individually and on behalf of the JIMMY RAYFORD GIBSON IRA, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Traderight Securities, Inc. ("Traderight"), George Dragel ("Dragel"), Michael Rukujzo ("Rukujzo"), and Christopher R. Wurtzinger ("Wurtzinger") have filed a two-count complaint seeking declaratory and injunctive relief against *pro se* defendants Richard G. Kirschman ("Richard"), Denise J. Kirschman ("Denise"), and Jimmy Rayford Gibson ("Gibson"). Defendants have moved to dismiss for lack of personal jurisdiction. For the reasons discussed below, defendants' motion to dismiss is denied.

## FACTS

"[T]he court must accept all allegations of the complaint as true except those controverted by defendants' affidavits; any conflict in affidavits must be resolved in favor of the plaintiff." Northwestern Corp. v. Gabriel Mfg. Co., Inc., 1996 WL 73622, at *2 (N.D. Ill. Feb.

16, 1996) (citing Turncock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987)). Defendants are investors who claim to have been defrauded by Enterprise Trust Company ("Enterprise").[1] To recover their losses, defendants instituted arbitration proceedings before the Financial Industry Regulatory Authority (the "FINRA") against Enterprise's founders and executives and against four brokerage firms, including Traderight, alleging that the brokerage firms aided and abetted Enterprise's fraud.[2]

Traderight is a securities broker-dealer at which Enterprise held one or more accounts and through which Enterprise purchased and sold securities. Dragel, Rukujzo, and Wurtzinger are allegedly "supervisors and control persons" of Traderight. Traderight alleges that it executed non-discretionary trades submitted by Enterprise and did not give trading advice or recommendations. Defendants allege that Traderight negligently failed to exercise appropriate supervision over Enterprise's accounts in violation of common law and state Blue Sky statutes, and that Dragel, Rukujzo, and Wurtzinger negligently failed to take steps to detect, prevent, and report Enterprise's fraud.

The instant case pertains to the existence and scope of plaintiffs' duty to defendants and whether this issue is properly subject to arbitration. Plaintiffs allege that they had no relationship with defendants, contractual or otherwise, and no agreement to arbitrate. Thus, plaintiffs argue that they owed no duty to defendants and cannot be held liable for their alleged

---

[1]The Securities and Exchange Commission filed an action against Enterprise in the Northern District of Illinois, No. 08 C 1260, Judge James B. Zagel presiding. Plaintiffs concede that Enterprise was a Nevada company, but allege that its principal place of business was in Illinois.

[2]The FINRA arbitration panels are located in Wisconsin and Texas. Both Enterprise and Traderight are no longer in business.

harm. Plaintiffs further argue that defendants cannot require them to arbitrate the parties' dispute. Plaintiffs seek a declaration of their rights and obligations with respect to defendants as well as preliminary and permanent injunctions restraining defendants from pursuing claims against plaintiffs in the arbitration proceedings before the FINRA.

## DISCUSSION

**Legal Standard**

Plaintiffs bear the burden of establishing a prima facie case of personal jurisdiction. Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002). When ruling on a motion to dismiss for lack of personal jurisdiction, the court may rely on evidence outside the pleadings, such as affidavits and declarations. See Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). The court must resolve all factual disputes in plaintiffs' favor. See Nelson v. Park Indus., Inc., 717 F.2d 1120, 1123 (7th Cir. 1983).

**Analysis[3]**

This court has jurisdiction over a non-resident, non-consenting defendant in a diversity case if Illinois state courts would have jurisdiction.[4] Purdue, 338 F.3d at 779. An Illinois state court has personal jurisdiction when authorized by: (1) the Illinois long-arm statute; (2) the

---

[3]Defendants argue that their dispute with plaintiffs is properly subject to arbitration. Specifically, defendants argue that plaintiffs' motions to dismiss in the arbitration proceedings have been denied, and that plaintiffs submitted to FINRA jurisdiction by filing uniform submission agreements and by filing answers. The court does not address the merits of these arguments at this time.

[4]This is a diversity case. Traderight is a Florida corporation with its principal place of business in Illinois. Plaintiffs Dragel, Rukujzo, and Wurtzinger are domiciled in Illinois. Defendants Richard and Denise are domiciled in Wisconsin, and Gibson is domiciled in Texas.

Illinois Constitution; and (3) the Due Process Clause of the Federal Constitution. Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 939 (7th Cir. 2000).

The Illinois long arm statute explicitly grants jurisdiction over a defendant engaging in "[t]he making or performance of any contract or promise substantially connected with this State" or "[t]he ownership of an interest in any trust administered within this State." 735 ILCS 5/2-209(a)(7), (13). Defendants in the instant case opened and maintained trust accounts with Enterprise, administered in Illinois. Gibson also entered into Private Portfolio Investment Agency Agreements with Enterprise, governing his accounts in Illinois.

Illinois' long-arm statute contains a "catch-all" provision, authorizing courts to exercise jurisdiction to the fullest extent allowed by the Illinois and federal Constitutions. 735 ILCS 5/2-209©; Hyatt, 302 F.3d at 714. Because there is no "operative difference" between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction, the inquiry collapses into an examination of whether jurisdiction over defendants complies with the test as set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), which requires that defendants have minimum contacts with Illinois "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."

How that standard is applied depends on whether a plaintiff is asserting "general" or "specific" jurisdiction. "General jurisdiction is appropriate where the defendant's contacts with the forum state are 'continuous and systematic.'" Citadel Group Ltd. v. Wash. Reg'l Med. Ctr., 536 F.3d 757, 760 n.3 (7th Cir. 2008) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). Specific jurisdiction applies where the suit "arises out of or is

4

related to the defendant's contacts with the forum." Id. (citing Helicopteros Nacionales de Colombia, 466 U.S. at 416).

In the instant case, plaintiffs assert specific jurisdiction over defendants. To determine whether a claim arises out of or relates to a party's contacts, "past contacts should either bear on the substantive legal dispute between the parties or relate to the operative facts of the case." GCIU-Employer Ret. Fund v. Goldfarb Corp., 565 F.3d 1018, 1023 (7th Cir. 2009). Thus, "the action must directly arise out of the specific contacts between the defendant and that forum state." RAR, Inc. v. Turner Diesel, 107 F.3d 1272, 1276 (7th Cir. 1997).

The instant action directly arises out of specific contacts between defendants and Illinois. The subject of the FINRA arbitration proceedings is defendants' transactions with Enterprise. Although Enterprise is a Nevada company, plaintiffs allege that "[a]ll management and administration of accounts, including the alleged fraud, took place in Illinois, as did all communication." In their declarations, Richard and Denise state that they "had no in person contact" with Enterprise individuals, and Gibson states that his only contact with Enterprise individuals occurred in Texas. Nevertheless, Enterprise managed and administered defendants' accounts from its offices in Illinois, and its account statements and other correspondence reflect this. In addition, defendants "engaged in extensive written, electronic and telephonic communication with employees and officers of Enterprise...and sent funds to Enterprise in Illinois." Defendants argue that these contacts would not have occurred had they known of Enterprise's fraud. Even assuming this is true, the contacts did occur, and the arbitration proceedings (as well as the instant case) arise out of those contacts.

Specific jurisdiction is proper if the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Citadel, 536 F.3d at 761 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)). The defendant's contacts with the forum state must not be "random, fortuitous, or attenuated;" rather, the defendant's contacts must be "such that [the defendant] should 'reasonably anticipate being haled into court there.'" Id. (quoting Burger King, 471 U.S. at 473).

Defendants argue that specific jurisdiction does not apply because defendants' sole contacts with the forum are that Enterprise committed its fraud in Illinois and that defendants wrote an informal complaint letter to the Receiver regarding the proposed plan of distribution. Plaintiffs respond that specific jurisdiction applies because of: (1) defendants' activities directed to and within Illinois specifically relating to the subject matter of this litigation; and (2) defendants' implied consent.

Plaintiffs argue that defendants consented to jurisdiction by filing appearances in the Enterprise receivership proceeding in this district and by seeking affirmative relief in filing challenges to the receiver's plan of asset distribution. Defendants characterize the latter as "an informal complaint letter to the Receiver complaining about the proposed plan of distribution." Plaintiffs respond that defendants "mischaracteriz[e] their involvement in the related receivership proceeding pending in this jurisdiction."

Defendants are correct in their argument that the instant case is distinguishable from General Contracting & Trading Interpole, Inc., 940 F.2d 20 (1st Cir. 1991), cited by plaintiffs for the proposition that defendants' consent "mak[es] a conventional long arm analysis irrelevant."

6

Id. At 22.  As defendants note, the third-party defendant in that case filed a claim against the third-party plaintiff in connection with same transaction.  The Kirschmans and Gibson did not file a separate claim.  Moreover, the fact that defendants appeared and defended themselves in a similar proceeding does not amount to purposeful availment.  The court agrees with defendants that they did not waive their right to object to jurisdiction by these actions.

Nevertheless, defendants' contacts with Illinois are not "random, fortuitous, or attenuated." Citadel, 536 F.3d at 761 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)).  As noted above, defendants opened and maintained trust accounts with Enterprise, administered in Illinois.  Defendants were aware that Enterprise's account statements and other correspondence reflected that it managed and administered defendants' accounts from its offices in Illinois.  Further, defendants communicated with employees and officers of Enterprise, albeit not in-person, and sent funds to Enterprise in Illinois.  Defendants should have reasonably anticipated being haled into court here.  They purposefully availed themselves of the privilege of opening and maintaining accounts, and thus doing business, in Illinois.

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss is denied.  Defendants are directed to respond to the complaint on or before September 20, 2010.  The parties are ordered to file a joint status report using the court's form on or before September 27, 2010.  The parties should specifically address the relationship and timing of the instant case to the FINRA arbitration proceedings.  This matter is set for a report on status October 7, 2010, at 9:00 a.m.

**ENTER:     August 26, 2010**

7

_____
**Robert W. Gettleman**
**United States District Judge**