IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Traderight Securities, Inc.; George Dragel; Michael Rukujzo; and Christopher R. Wurtzinger, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 10 C 2042 |
| v. | ) ) ) | Judge Edmond E. Chang |
| Richard G. Kirschman IRA; Denise J. J. Kirschman IRA; and Richard G. Kirschman as Trustee of the Kirschman Living Trust; | ) ) ) ) ) | |
| and | ) ) | |
| Jimmy Rayford Gibson, Individually and on Behalf of the Jimmy Rayford Gibson IRA, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Traderight Securities was a brokerage firm at which Enterprise Trust Company, an investment firm, maintained trading accounts. R. 1 ¶¶ 2, 5.[1] Alas, Enterprise allegedly committed a massive fraud against its clients, was put into receivership, and ordered to disgorge over $25 million and to distribute its remaining $37 million in assets to Enterprise clients. *Id.* ¶¶ 2, 23; *SEC v. Enterprise Trust Co.*, USDC No. 08 C 01260 (R. 158, Order of 9/23/08) (Zagel, J.). Traderight and three of its employees (we will refer to the firm and the employees collectively as Traderight unless the context demands otherwise) seek a declaration that they have not breached any legal

---

[1] Citation to the docket is "R." followed by the docket entry number.

duty to Defendants, who were clients of Enterprise. R. 1 ¶ 38.[2] Additionally, Traderight wishes to enjoin an arbitration proceeding in which the clients hope to impose liability on Traderight for the losses caused by Enterprise. *Id.* ¶ 41. But Traderight did enter into a written agreement to arbitrate the Enterprise clients' claims against Traderight. Indeed, Traderight participated in the arbitration until the arbitration panel denied Traderight's motions to dismiss, which argued that there had been no breach of duty to the clients – the same declaration Traderight seeks in this suit. For the reasons discussed below, Defendants' motion (R. 26) to stay this suit and compel the completion of the arbitration is granted.

I.

The following facts are drawn from the complaint. Defendants are two separate groups of investors who claim to have been defrauded by Enterprise. R. 1 ¶ 2. To recover their losses, Defendants initiated two separate arbitration proceedings before the Financial Industry Regulatory Authority (FINRA) against Enterprise's founders and executives and four brokerage firms. *Id.* ¶¶ 3-4. One of the four brokerage firms is Traderight. *Id.* ¶ 5. Traderight was a securities broker-dealer and member of FINRA. *Id.* ¶ 40. Dragel, Rukujzo, and Wurtzinger were allegedly "supervisors and control persons" of Traderight. *Id.* ¶¶ 6, 13-16.

---

[2]Traderight relied on diversity jurisdiction in its complaint, 28 U.S.C. § 1332, but only alleged that each individual plaintiff "lives in" Illinois. R. 1 ¶¶ 14-16. Because residency is not the same as citizenship for purposes of diversity jurisdiction, *Hunter v. Amin*, 583 F.3d 486, 491 (7th Cir. 2009), the Court sought clarification from Plaintiffs' counsel that the intent was to allege citizenship in Illinois, and if so, invited an oral motion to amend the complaint, R. 39. Counsel made that motion, R. 41, and thus diversity has now been properly alleged.

Defendants allege that Traderight and its employees aided and abetted Enterprise's fraud. R. 1 ¶ 5. Enterprise held one or more accounts in Enterprise's name with Traderight and purchased and sold securities using those accounts. *Id*. Traderight alleges that it executed non-discretionary trades submitted by Enterprise and that it did not give trading advice or recommendations to any of the defendants. *Id*. Defendants allege that Traderight negligently failed to exercise appropriate supervision over Enterprise's accounts in violation of common law and state Blue Sky statutes, and that Dragel, Rukujzo, and Wurtzinger negligently failed to take steps to detect, prevent, and report Enterprise's fraud. *Id*.

To initiate the FINRA arbitrations, all parties signed "uniform submission agreements" (USAs). R. 27, Exhs. A-D. Plaintiffs signed USAs that included this language:

> The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, . . . and all related counterclaims and/or third party claims which may be asserted, to arbitration . . . .

R. 27, Exh. A, C. Defendants signed USAs that contained identical language. R. 27, Exh. B, D.

Defendants executed their USAs and filed their claim statements in late 2008. R. 27, Exh. B, D. Plaintiffs executed their USAs and filed written answers to the claims on January 5, 2009. R. 26, Exh. A, C. During the arbitration proceedings, Plaintiffs filed motions to dismiss: in the Kirschmans' proceedings, the motion to dismiss was filed in July 2009, R. 32, Exh. B; in Gibson's proceedings, the motion to

3

dismiss was filed in November 2009, R. 32, Exh. A. Both motions argued that there was no relationship between Traderight and Defendants that could form the basis of liability. R. 32, Exh. A at 3, 5, 8, 10, Exh. B at 3, 5, 8, 10. Significantly, the motions did *not* argue that the arbitrators were without authority to adjudicate the controversy. R. 32, Exh. A, B.

After the arbitration panel denied the motions to dismiss, R. 26 at 3,[3] Traderight filed the present action on April 1, 2010. In the complaint, Plaintiffs seek a declaration that they breached no legal duty to the former clients of Enterprise, and also seek preliminary and permanent injunctions restraining the former clients from pursuing the arbitration proceedings. R. 1 ¶ 38, 41. Defendants argue that their dispute with Traderight is indeed subject to arbitration, and now move this Court to compel arbitration. R. 26.

## II.

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, if the parties entered into an arbitration agreement and the asserted claims in a lawsuit are within the arbitration agreement's scope, a motion to compel arbitration must be granted. 9 U.S.C. §§ 3, 4; *Sharif v. Wellness Int'l Network Ltd.*, 375 F.3d 720, 726 (7th Cir. 2004) (citing *Kiefer Specialty Flooring v. Tercet, Inc.,* 174 F.3d 907, 909 (7th Cir. 1999)). Section 3 of the FAA specifically requires granting a motion to stay a lawsuit where

---

[3]In both the motion to stay and the reply brief in support of that motion, Defendants assert that Plaintiffs' motions to dismiss were denied by the arbitration panel, R. 26 at 3, R. 32 at 1, and Plaintiffs have not disputed that assertion.

4

"the issue involved in such suit . . . is referable to arbitration" under a written agreement. 9 U.S.C. § 3. And Section 4 requires that the court order the parties to proceed in arbitration if there is an agreement to arbitrate. 9 U.S.C. § 4.

Here, the former clients of Enterprise argue that Traderight agreed to arbitrate the claims at issue in the lawsuit – Traderight's potential liability to Defendants – by executing the uniform submission agreements. Traderight's first response is that the question of whether there exists an agreement to arbitrate is a question for this Court to decide, not for the arbitrators to decide. R. 32 at 3-4.[4] But that response misses the mark: Defendants too believe that it is for the Court to decide whether the parties have agreed to arbitration. R. 26 at 1, 4.[5]

The parties did agree to arbitration. The Kirschmans and Gibson brought claims in the arbitration against Traderight, seeking to impose liability on Traderight for the losses caused by Enterprise's conduct. Compl. ¶ 38; R. 26, Exh. A ¶ 1, Exh. B ¶ 1. Traderight explicitly agreed to arbitrate those claims by executing the USAs.[6]

---

[4]Absent clear and unmistakable evidence that the parties agreed to have the arbitrators themselves decide arbitrability, it is for the courts to decide arbitrability. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995); *Int'l Brotherhood of Elec. Workers, Local 21 v. Illinois Bell Tel. Co.*, 491 F.3d 685, 687 (7th Cir. 2007). No evidence here suggests that the arbitrability question was designated to the arbitrators rather than the courts.

[5]The general division of labor between courts and arbitrators are as follows: courts decide whether a contract was formed at all and decide challenges that are specific to the arbitration agreement, whereas arbitrators decide challenges to the validity of the entire contract. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741-42 (7th Cir. 2010).

[6]The parties do not explicitly point out which state law applies to the question of contract interpretation, but the Court need not go further than the ordinary language of the written agreement.

Specifically, the USAs embody the agreement that "the undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement . . . to arbitration . . . ." R. 27, Exh. A, C. Thus, Traderight has explicitly submitted the dispute to arbitration.

To avoid the effect of the USAs, Traderight relies on *Prudential Securities v. Emerson*, arguing that a signed USA is not dispositive of arbitrability. 905 F. Supp. 1038 (M.D. Fla. 1995). In that case, an individual brought two claims against Prudential: one arising from dealings with a broker from Prudential Securities Incorporated, and the other arising from dealings with an insurance agent from Prudential Life Insurance. *Id.* at 1039. Although Prudential agreed that the securities claim was arbitrable, Prudential insisted that the insurance claim was not. *Id.* at 1043. The parties executed USAs with identical language to the USAs at issue here, and the claims were submitted to arbitration. *Id.* at 1040-41. When Prudential submitted its written answer to the claims, it objected to the arbitrability of the insurance claims. *Id.* at 1043. The objection to arbitrability was repeated throughout the arbitration, but the objection was denied, and the arbitrator decided all of the claims. *Id.* at 1043. Afterwards, Prudential sued in federal court to challenge the arbitration decision, and the district court vacated the portion of the arbitrator's decision pertaining to insurance claims, holding that those claims were not arbitrable, despite the USAs. *Id.* at 1043. Of particular importance to the court was that Prudential immediately and repeatedly challenged arbitrability from its first written

answer and regularly throughout the arbitration. *Id.* at 1044. Additionally, the court noted that Prudential attended the arbitration and signed the USA because it agreed that the *securities* claim was arbitrable and wished to pursue the required arbitration. *Id.* at 1044.

But *Prudential* is materially distinguishable from what happened here. Traderight's conduct did not evidence a refusal to agree to arbitrate in the same way that Prudential's conduct demonstrated the lack of an agreement. Traderight did not make repeated objections to the arbitrator's authority to hear the issue of liability to the former clients of Enterprise. Instead, Plaintiffs signed their USAs and submitted their answers in the arbitration on January 5, 2009. Traderight then waited several months before filing motions to dismiss, in July and November 2009. R. 32, Exh. A, B. Unlike *Prudential*, Plaintiffs did not challenge arbitrability at the outset of the arbitration proceeding.

Indeed, after the arbitration's initiation, Plaintiffs did not dispute arbitrability in the arbitration proceeding itself, but instead urged the arbitrators to conclude that Traderight was not liable for the Enterprise-caused losses. When Traderight finally did move to dismiss the arbitration, the motions to dismiss did *not* argue against arbitrability of the claims, in the sense of arguing that the former Enterprise clients had brought their claims in the wrong forum. *See* R. 32, Exh. A, B. To the contrary, the motions argued the *merits* of the case, namely, that Traderight had breached no duty to the former clients of Enterprise, and thus the arbitrators should dismiss the

7

arbitration. R. 32, Exh. A, B. In both motions to dismiss, Traderight made only legal and factual arguments on the merits. For examples:

- ▸ the clients gave Enterprise power of attorney to manage their accounts and Traderight supposedly "had nothing to do with" the accounts. R. 32, Exh. A at 3, Exh. B at 3.

- ▸ the clients argued in the arbitration that Traderight should have supervised the Enterprise traders but, according to Traderight, "[s]uch a duty is not required under the federal or state securities laws." R. 32, Exh. A at 5, Exh. B at 5.

- ▸ Traderight was assertedly not involved in the decision to grant Enterprise margin in an omnibus account, and "[a]s anyone familiar with the securities industry knows, an introducing broker, like Traderight, simply does not make those decisions." R. 32, Exh. A at 5, Exh. B at 5 (emphasis in original).

- ▸ Enterprise executives were not required to be registered under the applicable state Blue Sky laws. R. 32, Exh. A at 8, Exh. B at 8.

- ▸ Traderight had no "duty to supervise" the Enterprise executives under FINRA Rules. R. 32, Exh. A at 10, Exh. B at 10.

Among all of these arguments on the merits, the motions to dismiss never addressed arbitrability. *See* R. 32, Exh. A, B. All this is in contrast to the evidence in *Prudential* that Prudential never agreed to arbitrate the dispute.

To defend their decision to sign the USAs, Plaintiffs argue that they had no choice but to sign the USAs because FINRA's rules require a party to sign a USA on pain of being barred from asserting defenses or facts at the arbitration hearing. R. 32 at 4; FINRA Code of Arbitration Procedure for Customer Disputes (Customer Code) §§ 12303, 12308. But if Plaintiffs wished to contest arbitrability – which, as detailed above, they did not contest in any event – Plaintiffs should not have signed the clearly-worded USAs without first contesting arbitrability. Even the FINRA provision to

8

which Traderight cites provides arbitration respondents with 45 days to sign the USA and file an answer. Customer Code § 12303(a). Thus, Traderight could have filed a declaratory judgment action – like this one – *before* executing the USA, agreeing to arbitrate the former Enterprise clients' claims, and seeking a finding of no liability on the merits, via the motions to dismiss, in the arbitration proceeding.

This is the same holding reached in *Smith v. Bartolini*, which held that a uniform submission agreement is a clear commitment to arbitrate a dispute, regardless of some reason, not otherwise expressed in the contract's text, for signing the USA. 2003 WL 21148940, at *8-9 (N.D. Ill. May 14, 2003). In *Smith*, an investment advisor sought vacatur of an adverse arbitrator's decision, arguing that the claim was not arbitrable. *Id.* at *1. Smith had signed a USA with the same plain language at issue in this case, stating that the party is submitting to arbitration. *Id.* at *2. Like Plaintiffs here, Smith also argued that he only signed the USA because he wanted to engage in "motion practice," and because it was a "must" that he submit to an arbitration demand. *Id.* at *9. *Smith* held that the unwritten subjective intent of Smith did not affect the legal consequence of his signing the USA: "we cannot simply ignore the clear and unequivocal language indicating that Smith agreed to arbitrate all the claims . . . ." *Id.*

Likewise, the clear and unequivocal language of the USAs signed by Plaintiffs here submitted the claims to arbitration. Plaintiffs must abide by their agreement to arbitrate.[7]

## III.

Defendants' motion to stay this proceeding and compel arbitration (R. 26) is granted because Plaintiffs agreed, by executing the uniform submission agreements, to arbitrate the parties' dispute.

ENTERED:

*Edmond E. Chang*

———————————————
Honorable Edmond E. Chang
United States District Judge

Date: February 15, 2011

---

[7] Because the Court holds that the parties agreed to arbitrate the dispute, it is unnecessary to address Defendants' back-up argument that Traderight must submit to arbitration as a member of FINRA, independent of the USAs. R. 26 at 4, R. 34 at 3-4.